2026 IL App (2d) 260203-U
No. 2-26-0203
Order filed July 27, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

CODY R. MARION, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable Victoria A. Rossetti and Michael G. Nerheim, Judges, Presiding.
No. 26-CF-488

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court erred in granting the State's petition to deny defendant pretrial release and ordering defendant detained. Reversed and remanded.

¶ 2   Defendant, Cody R. Marion, appeals from an order of the circuit court of Lake County, granting the State's verified petition to deny him pretrial release, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will

refer to these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that (1) he poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, or (2) less restrictive conditions would fail to mitigate that threat. We reverse and remand.

¶ 3                              I. BACKGROUND

¶ 4      On March 6, 2026, defendant was charged with aggravated battery to a child (720 ILCS 5/12-3.05(b)(2) (West 2024)), a Class 3 felony, domestic battery/bodily harm (*id.* § 12-3.2(a)(1)), a Class A misdemeanor, domestic battery/physical contact (*id.* § 12-3.2(a)(2)), a Class A misdemeanor, and child endangerment (*id.* § 12C-5(a)(1)), a Class A misdemeanor. The charges stemmed from allegations concerning defendant's role in the physical, mental, and emotional abuse of his girlfriend's 11-year-old son, R.H.

¶ 5      On March 7, 2026, the circuit court entered a no-contact order, providing that defendant have no contact with Priscilla M., R.H., or R.H.'s four siblings: M.H. (male, age 13), R.M. (male, age 7), A.M. (female, age 3), and S.M. (female, age 1).

¶ 6      Also on March 7, 2026, the State filed its verified petition to detain defendant. The State specifically alleged that defendant was charged with detention-eligible offenses. See 725 ILCS 5/110-6.1(a)(1.5), (4) (West 2024) (aggravated battery and domestic battery, as charged here, are detainable offenses). The State further alleged that defendant's pretrial release would pose a real

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

and present threat to the safety of any person or the community and that no condition or combination of conditions could mitigate the threat posed by defendant's release.

¶ 7                                    A. Detention Hearing

¶ 8      A hearing was held on the State's petition on March 9, 2026, before Judge Michael G. Nerheim. The State offered into evidence photographs of R.H.'s injuries, body-cam footage, and police reports.

¶ 9      In support of its petition, the State proffered that defendant was charged as a co-defendant with Priscilla M., R.H.'s mother. It alleged in its petition that, on March 6, 2026, Fox Lake officers responded to a local business for a report of a bruised and bloody child, R.H., who was 11 years old and ran away from his nearby home. Preliminary observations showed he had numerous bruises throughout his head, arms, and legs, dried blood in his nose and mouth, and red welts across his chest, arms, and legs. R.H. also had a dried, blueish, soapy substance on his face and chest. R.H. reported that his mother beat and abused him. After 911 was called, he was taken into protective custody, as were his siblings.

¶ 10     That morning, R.H. had woken up to Priscilla M. throwing things around the house. Defendant was doing the dishes. Priscilla M. got mad and began hitting, pushing, and punching R.H., while telling him that nobody loved him. R.H.'s two sisters sat on the couch, asking Priscilla M. to stop. Priscilla M. punched R.H. in the face, causing a bloody nose. Priscilla M. also grabbed a bottle of dish soap and poured the soap down R.H.'s mouth and into his ear. R.H. coughed up blood afterwards. R.H. then ran out of the house, wearing only his underwear. As R.H. was leaving, Priscilla M. grabbed a knife and held it to her throat, threatening to hurt herself. R.H. ran to a local flower shop, where he asked an employee to call 911.

¶ 11    R.H. further related that the abuse began around 2023, when Priscilla M. smacked him across the face.  When he went to school, he was asked about the mark, but he did not say anything, because Priscilla M. told him to lie.  She told R.H. not to tell anyone at school or she would go to jail.  R.H. was interviewed in May 2024 about this incident, and the sheriff's office investigated the case.

¶ 12    R.H. stated that his brothers attended school but that he did not because his mother did not let him attend.  He attended through fourth grade, but was pulled out for his fifth-grade year to allegedly be home schooled.

¶ 13    R.H. described ongoing abuse by Priscilla M.  She beat him with extension cords, black metal spatulas, spoons, and punched him in the face.  As punishment, she made R.H. write in a notebook, over and over, "you're not a loved child, everybody hates you."  He had to write in the notebook, while kneeling between uneven floorboards in the house.  Priscilla M. also told R.H. that she was going to stab him in the back 33 times.  Usually, R.H. would have to remove his clothes when Priscilla M. hit him so that it would hurt more.  One time, Priscilla M. threw scissors at R.H., and they scratched him on the side of his head.  Further, two months earlier, Priscilla M. punched R.H. in the face, chipping his tooth.  R.H.'s siblings did not get hit, just R.H.  Priscilla M. also scattered various food items and toys on the floor and made R.H. clean up.  She ripped his clothes and made R.H. put his hands on the kitchen counter so that she could strike him.  She also spat in his face.

¶ 14    Priscilla M. also made M.H. beat up R.H. by choking him, punching him in the chest, stomach, and face, and slamming him on the ground.

¶ 15    R.H. stated that his siblings ate food such as McDonald's, Pizza Hut, or Dominos, but R.H. had to eat ravioli or other canned food.  He also ate separately from the rest of the family, usually

in the hallway. He has a bed in his room (in the attic) but has to sleep on the floor. R.H. cannot go out in public or outside, except to take out the trash and get the mail. A neighbor asked Priscilla M. why he heard so much screaming from her house, and Priscilla M. replied that the kids were just playing/laughing. Priscilla M. told R.H. that his brothers were her favorite boys and that R.H. was just the adopted child. She also stated that R.H. deserved to die and that, one day, she will dump his body.

¶ 16    As to defendant, whom he referred to as his stepdad, R.H. alleged that defendant has been in his life for several years and sided with Priscilla M. Defendant was around and watched Priscilla M. beat R.H. Defendant told R.H. that, if he did not listen, he was going to get beaten by Priscilla M. Defendant also told R.H. that he deserved it and should just take it.

¶ 17    R.M. was also interviewed and stated that Priscilla M. and defendant yell at him when he gets in trouble, but R.H. cries because Priscilla M. hurts him when he does not listen. Priscilla M. hurt R.H. every day and used a "cooking thing" to do so. During this time, R.H. would say, "why are you hurting me."

¶ 18    The State argued in its petition that the allegations concerned crimes of violence, defendant was a threat to R.H.'s safety, and he must be detained to mitigate the threat he posed. Further, there were no conditions or combination thereof that defendant would abide by or that would adequately protect the victim or the community short of detention. As effective as pretrial monitoring might be in many cases, the State further argued, no technology could confine defendant to his home with certainty and pretrial services could not engage in effective 24-hour surveillance of defendant's residence.

¶ 19    At the hearing on its petition, the State further proffered that, when Priscilla M. was interviewed, she stated that defendant was in the home on Friday morning before he went to work.

Priscilla M. admitted to hitting R.H. with kitchen utensils and to pouring soap down his mouth. Defendant told police that he got into an argument with R.H. that morning and yelled at him because tools were missing from the toolbox. The utensils and soap, along with the notebook, were recovered from the home.

¶ 20    The State argued that defendant did nothing to keep R.H. safe or to stop the abuse. R.H. will experience anxiety, fear, and psychological damage if defendant were released; he is a danger. Acknowledging defendant's low public-safety-assessment (PSA) score, the State argued that it should be given little weight, given the "amount of time and years of torture that this boy suffered. This is abuse that occurred behind closed doors. It was abuse that was hidden from neighbors. It was hidden from teachers. It was hidden from the public." Even though defendant was charged as an accomplice, the State continued, there was "too much risk to R.H. and the other children if" defendant were released. "The psychological risk not only to R.H. but to his siblings that have been made to endure and live with this every day as well." Defendant had a duty to protect R.H., it asserted, but he did not do so.

¶ 21    The defense responded that defendant, age 35, lives in Fox Lake and works full-time. The two oldest children are Priscilla M.'s children, and the three youngest children are defendant's children. Defendant is not a stepfather, but Priscilla M.'s boyfriend. He had, counsel argued, nothing to do with the abuse, and there were no allegations that he touched any of the children. Counsel further asserted that defendant's position was that he tried to stop the abuse, but this resulted in fights with Priscilla M., where "my client's a victim of this, too. And he was kicked out of the house for periods of time. He comes back. They get into a fight. So, he has tried to stop it." Counsel also asserted that defendant was at work when most of the abuse occurred.

¶ 22    Counsel conceded that defendant "probably [ ] could have done more to stop it, but I don't know that that makes him a threat to anybody" and, "when all of this was happening, he wasn't there."  Counsel argued that defendant has never been a threat to his children and, as to Priscilla M.'s children, defendant "wouldn't have any contact with them anyway going forward."  "He did step in to try and stop it.  But then he—you know, he gets a beating too and gets kicked out."  Defendant's PSA score was low, counsel noted, and his criminal history consisted of two cases involving charges of driving while on a suspended license, which were *nolle prossed*.

¶ 23    In reply, the State argued that defendant knew about the abuse since at least 2024, when he and Priscilla M. were listed as alleged perpetrators in the DCFS report concerning R.H. going to school with marks and bruises on his face.  It added, "[w]hether he participated in the physical abuse or not, he is in the role of a caregiver and he has a duty to protect the child and he did not."

¶ 24    The circuit court granted the State's petition.  It determined that the State had established that defendant had committed detainable offenses.  The court found the allegations "chilling," and it noted that the incidents were not isolated, "where this defendant is charged with failing to act on behalf of this child's interest" and where he "essentially participated in the abuse over the course of years" by joining Priscilla M. in encouraging one of the other children to beat up R.H.[2]  The court further noted that there was DCFS involvement in the past.  Further, "[t]he defendant has been present during these beatings, [and] would tell [R.H.] to listen or he was going to be beaten more."  Also, the court noted R.H.'s allegation that defendant told him that he deserved it and should just take it.

---

[2] The latter finding misinterprets the record.  R.H. alleged only that Priscilla M. had M.H. beat him up.

¶ 25    Next, the court acknowledged that defendant's PSA scores were low, but found that "this is a crime of violence." The court also noted that it considered R.H.'s age, defendant's age, the extent of the abuse, the extent of the injuries (both physical and emotional), that the abuse was ongoing for about two years, and that there was a history of abuse (including DCFS involvement). There were also other children in the home. Based on the foregoing, the court determined that the State had met its burden to show dangerousness.

¶ 26    The circuit court next determined that there were no sufficient safeguards that could be put in place that would mitigate the threat defendant posed. It noted that it considered electronic home monitoring (EHM), but it was concerned that (1) it does not exist (presumably referring to the fact that it allows for a minimum of two days of "movement" to "participate in basic activities" (730 ILCS 5/5-8A-4 (West 2024))); and (2) even if it did, "this abuse is alleged to have taken place in the defendant's home, while—at least [o]n some occasions while the defendant was present."

¶ 27                              B. Motion for Relief and Notice of Appeal

¶ 28    On April 15, 2026, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 29    A hearing was held on defendant's motion on April 29, 2026, before Judge Victoria A. Rossetti. Defense counsel argued that defendant had no prior criminal history and had low PSA scores. Counsel also noted that defendant was charged under an accomplice theory of accountability for the abuse of R.H., who had been under his care. Defendant had been in the child's life for a number of years, lived with him, "and so we concede that he had some responsibility as it relates to this child." However, counsel continued, defendant never engaged in any abuse himself, and none was committed at his behest. Defendant "may have been present for some, but we would argue not all, of the abuse that took place." Counsel argued that dangerousness

was not shown, where defendant had no prior criminal history, he did not engage in any of the abuse, Priscilla M. was currently in custody, and the children would no longer be in defendant's care, because they live with other family members in another part of the state. Thus, defendant would comply with any court order. Further, the court could order that defendant not have contact with the concerned persons.

¶ 30     The circuit court denied defendant's motion for relief. It reiterated the findings the court had made in ruling on the petition to detain. On April 29, 2026, defendant filed a notice of appeal.

¶ 31                                        II. ANALYSIS

¶ 32     Article 110 of the Code, as amended, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 5/110-2(a), 110-6.1(e). To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 5/110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (*id.* §§ 5/110-6.1(a)(1)-(7), (e)(2)) or a high likelihood of willful flight to avoid prosecution (*id.* §§ 5/110-6.1(a)(8), (e)(3)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (*id.* § 5/110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must

be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 33    In this case, the parties proceeded solely by proffer.  Accordingly, we review *de novo* the circuit court's factual findings and its detention orders.  *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 34    Preliminarily, we note that, defense counsel asserted below that defendant is not R.H.'s stepfather, but, rather, Priscilla M.'s boyfriend.  Further, in its response to defendant's motion for relief below, the State included argument concerning parental accountability law/parental duty, but raises no such argument in its appellee's memorandum (wherein it refers to R.H. as defendant's stepson); thus, we deem the issue forfeited.  See *People v. Drew*, 2024 IL (5th) 240697, ¶ 21 (issues raised in motion for relief but not argued in memorandum deemed abandoned).

¶ 35    Here, defendant was charged under a theory of accountability.  Accountability is a legal theory whereby a defendant is held responsible for a crime which he or she personally did not commit, but which was committed by another.  *People v. Skiles*, 115 Ill. App. 3d 816, 825 (1983).  Accountability is not a crime in and of itself but, rather, a mechanism through which a criminal conviction may result.  *People v. Hicks*, 181 Ill. 2d 541, 547 (1998).

¶ 36                                            A. Dangerousness

¶ 37    Defendant argues first that the State failed to meet its burden of proving by clear and convincing evidence that his pretrial release poses a real and present threat to the safety of any person or the community based on the specific articulable facts of the case.  725 ILCS 5/110-6.1(a)(1)-(7) (West 2024).

¶ 38    Under the Code, factors that a court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including

whether the offense is a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (*id.* § 5/110-5), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. *Id.* § 5/110-6.1(g).

¶ 39    Here, the nature and circumstances of the offenses charged are serious and alarming. As the circuit court found, the allegations involve crimes of violence. R.H. alleged that defendant was present while his mother beat, abused, and berated him. On the date R.H. ran to the flower shop, defendant was doing the dishes and did nothing to stop Priscilla M. from punching R.H., giving him a bloody nose, pouring soap into his mouth and ear, and telling him that nobody loved him. R.H. also alleged that defendant sided with Priscilla M., watched Priscilla M. beat him, and has told R.H. that he deserves it and should just take it.

¶ 40    R.H. is defendant's girlfriend's son, R.H. refers to defendant as his stepfather, and defendant has lived in the home for several years with his three children. When police responded to the 911 call, R.H. presented with numerous bruises throughout his head, arms, and legs, dried blood in his nose and mouth, and red welts across his chest, arms, and legs. R.H. also had a dried

blueish soapy substance on his face and chest. The State presented evidence of past DCFS involvement by defendant and Priscilla M. relating to child abuse. Defendant is 35 years old, and R.H. is a minor (11 years old).

¶ 41     We conclude that the State met its burden to show that defendant is a danger to R.H. and the other children. The allegations reflect that, for years, he witnessed Priscilla M. abuse and berate R.H. (including in the presence of other minors in the home and having one of the minors, M.H., participate in the abuse) and keep him confined near the home. Although there are no allegations or other evidence that defendant participated in the recent physical abuse of R.H. or any of the other minors, he stood by, essentially doing nothing, while the alleged abuse took place. Further, he allegedly told R.H. that he deserved the abuse and to just take it and, again, he was listed as one of the alleged perpetrators in a 2024 DCFS report concerning injuries to R.H. Accordingly, we conclude that, based on the specific articulable facts of this case, defendant is a real and present threat to the safety of R.H. and the other children.

¶ 42                               B. Conditions of Release

¶ 43     Defendant's second argument is that the State failed to meet its burden to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat he posed to any person's safety. We conclude that the circuit court erred in finding that no conditions could mitigate the threat defendant posed.

¶ 44     In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the circuit court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk

- 12 -

of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The history and characteristics of a defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." *Id.* § 5/110-5(a)(3)(A)-(B).

¶ 45  Defendant concedes that the allegations here are serious but argues that they are unlikely to recur while he awaits trial, because R.H. is under DCFS's care and the court signed an order of protection precluding his children from living with him and ordering him to have no contact with the minors. He contends that no evidence suggests that he will not abide by the court's orders and that there were no allegations that he inflicted any harm on the children himself or encouraged the abuse. Defendant also notes that he is charged only as an accomplice. He contends that there is no evidence to suggest that he is a danger to any person or the community. Defendant also notes that he lacks a criminal history, has no history of violence, and scored low on the PSA. The circuit court, he notes, believed that home confinement would not be effective because the abuse occurred in defendant's home. But, without any children present, he argues, there is no reason to believe he would abuse or allow Priscilla M. (if she were released) to hurt anyone.

¶ 46  The State responds that the circuit court did not err in determining that no conditions could mitigate the threat defendant posed. It notes that defendant was present in the home for years while R.H. was subjected to a staggering variety and amount of daily abuse, he did nothing to

- 13 -

intervene, and he berated R.H. before, during, and after Priscilla M. beat him with various objects. The State also (erroneously) asserts that defendant encouraged the other children in the home to beat R.H.

¶ 47    We conclude that the circuit court erred in finding that the State had met its burden to show that no conditions could mitigate the threat defendant poses. Defendant is charged under an accountability theory, and there are no allegations that he physically abused R.H. or any of the other minors in the home. Currently, none of the minors live in the home. We remand for a hearing on the conditions of release. *People v. Cousins*, 2025 IL 130866, ¶ 36. "At such time, the circuit court shall impose the mandatory conditions required by the Act and may impose additional conditions at its discretion to ensure the appearance of defendant and the safety of the community. See 725 ILCS 5/110-5(c), 10 (West 2022)[.]" *Id.*

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we reverse the judgment of the circuit court of Lake County and remand for further proceedings.

¶ 50    Reversed and remanded.